# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CANDACE MICHELLE TYSON,**

      **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:10-cv-536-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for Supplemental Security Income. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

## Procedural History

Plaintiff protectively filed an application for Supplemental Security Income on October 10, 2007, alleging that she became unable to work on May 25, 2007 (R. 107, 125). Her claim was denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 57, 64, 78, 27-52). On December 1, 2009, the ALJ issued a decision denying Plaintiff's application (R. 12-21). The Appeals Council denied Plaintiff's request for review (R. 1-5), making the ALJ's decision the final decision of the Commissioner. The instant action followed (Doc. No. 1), and the parties consented to the jurisdiction of the undesigned United States Magistrate Judge. The parties have briefed the issues and the case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## Nature of Claimed Disability

Plaintiff alleged disability beginning on May 25, 2007, due to a "head injury, back and neck problems, anxiety, depression" (R. 130).

*Summary of Evidence Before the ALJ*

Plaintiff was thirty-one years old at the time of the ALJ's decision, with a high school education and prior relevant work experience as a housekeeper, dietary aide/cook, and a nursing assistant (R. 107, 131, 136).

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and in the interests of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of treating providers within the pertinent time period, the record includes the opinions of non-examining state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at the hearings and the testimony of a Vocational Expert. By way of summary, the ALJ found Plaintiff had the impairments of post-concussive syndrome, low back pain, neck pain, left arm and left hand pain, headaches, bronchial asthma, anxiety, and depression (R. 14), and the record supports this uncontested finding. The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (the Listings), 20 C.F.R. pt. 404, subpt. P, app. 1 (2009), and determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain limitations: she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot tolerate concentrated exposure to humidity or hazards; tolerate any exposure to pulmonary irritants; or climb ladders, ropes, or scaffolds (R. 15). In addition, the ALJ found that Plaintiff "can perform simple, routine, repetitive tasks and understand, remember, and carry out simple instructions, adapt to changes in the work setting, and maintain concentration and

persistence for simple, routine, and repetitive tasks" (R.15). The ALJ also found that Plaintiff "can respond appropriately to supervisors, co-workers, and to usual work situations." *Id.* The ALJ concluded that Plaintiff could perform her past relevant work as a motel housekeeper (R. 19), and, citing the testimony of the Vocational Expert, made alternative findings that there are other jobs existing in significant numbers in the national economy that Plaintiff was able to perform (R. 19-20). Therefore, the ALJ determined that Plaintiff was not disabled (R. 21).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.,* 357 F.3d at 1240 n. 8 (internal citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord,*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises three issues on review, asserting that: 1) the Appeals Council did not apply the correct legal standards to new and material evidence; 2) the ALJ did not apply the correct legal standard to Plaintiff's alleged medication side effects; and 3) the ALJ's finding that Plaintiff could perform light work, her past relevant work, and other work in the national economy is not supported by substantial evidence in that the ALJ did not include limitations from anxiety attacks, depression, moderate difficulties in pace, and medication ineffectiveness and side effects in his RFC, or in the hypothetical presented to the Vocational Expert.

**New and Material Evidence**

In a Request for Review before the Appeals Council, the Plaintiff submitted a "check-the-box" form signed by Dr. Aneja, her pulmonologist, on January 21, 2010 (R. 432). The prepared form tendered to Dr. Aneja stated that Plaintiff "reports" symptoms of extreme fatigue; shortness of breath and wheezing with even minimal exertions; shortness of breath when exposed to cleaning solutions; shortness of breath when bending or lifting; the need for frequent breaks; and an inability to perform work for eight hours a day, five days a week on a sustained basis; and asks Dr. Aneja to check yes or no boxes indicating if these symptoms are "reasonably consistent with the medical signs and findings" she had observed (R. 432). Dr. Aneja checked yes for all of the above boxes. Notably, the form also inquired:

> Based upon a review of the medical records, the patient history provided by Ms. Tyson and the level of severity of the impairments which were diagnosed upon examination, in your opinion, have the above impairments and limitations existed since she was in a car accident in May 2007?

Dr. Aneja checked neither the yes box nor the no box, but handwrote a question mark, noting that "I saw her first in 6/08." Dr. Aneja did not provide any answer for the next question, which inquired: "If not, what is the onset date of the conditions and limitations set forth above?" (R. 432). As the report was prepared shortly after receipt of the unfavorable administrative decision and submitted to the Appeals Council by Plaintiff's attorney, it was not presented to or evaluated by the ALJ. Plaintiff contends that this is new evidence of material findings that contradict the ALJ's determination and warrants remand.

This Court must consider evidence not submitted to the ALJ but considered by the Appeals Council in reviewing the administrative decision. *Ingram v. Commissioner of Social Security*, 496 F. 3d 1253, 1258 (11th Cir. 2007). It is incumbent upon the Court to evaluate the record as a whole to determine whether substantial evidence supports the ALJ's decision and to determine whether the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the "weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261. Here, the Appeals Council stated that it considered the additional evidence, but found no basis for changing the ALJ's decision. When reviewing the Appeals Council's denial of review, courts are to "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Council must consider in making its decision whether to review an ALJ's decision." *Robinson v. Astrue*, 365 Fed. Appx. 993, 996 (11th Cir. 2010). "'New' evidence is evidence that is non-cumulative and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Id.* (internal citations omitted). Applying the above standard, the Court finds no error.

The Court notes initially that the form is "new" in that it is dated after the ALJ's decision, but there is nothing in the report itself to indicate that the check box "opinion" (if opinion it be) is based

-5-

on any new information. The form is unaccompanied by any new treatment notes and appears to be based on evidence that was already evaluated by the ALJ. *See Hoffman v. Astrue,* 259 Fed. Appx. 213 (11th Cir. 2007) (unpublished) (remand not warranted because new opinion report was based on medical records already before the ALJ and the evidence would not change the result). Regardless, the Court agrees with the Commissioner that the check box form does not constitute an "opinion" entitled to controlling deference on the ultimate issue of disability.

Generally speaking, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record

as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, the form is from a treating provider, but merely indicates in conclusory fashion that certain symptoms are "reasonably consistent" with Plaintiff's asthma. It says nothing with respect to how severe these symptoms are or how often they occur; nor does it identify any particular findings in the treatment notes to support the conclusion that Plaintiff was unable to work on a sustained basis. Indeed, the ALJ reviewed and summarized the treatment notes of this provider in his determination and found that they supported a conclusion that Plaintiff's asthma is not as debilitating as Plaintiff contends (R. 17-19). This finding is supported by substantial evidence.[1] *See Robinson, supra,* (the Appeals Council did not err by upholding the denial of benefits without making specific findings regarding a disabled person's license plate affidavit completed by her treating physician, noting that "the Appeals Council was free to discount the treating physician's opinion concerning [the claimant]'s walking limitation because that opinion was inconsistent with the physician's other assessments and with other substantial evidence.") 365 Fed. Appx. at 997.

As stated, the standard is whether the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the "weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261. Reviewing the record as a whole, including the check box form, the Court finds substantial evidence supports the ALJ's decision and the Appeals Council thus did not err.

---

[1] The treatment notes indicate eight visits total, with episodic flare ups and only mild shortness of breath or wheezing noted (R. 394-398, 407, 410, 414, 421, 424-425). On October 21, 2009, Dr. Aneja reported that Plaintiff underwent a Pulmonary Function Test and "did not give good efforts during this study." (R. 424). As a result, Dr. Aneja concluded that "[Plaintiff's] pulmonary function abnormality is out of proportion to her physical findings." *Id.*

On May 25, 2007, Plaintiff presented to the hospital following a motor vehicle accident involving "no loss of consciousness" (R. 212). Physical examination was largely unremarkable. Her lungs were clear and there was full range of motion of her neck and extremities (R. 213). The impression was left facial and right lateral malleolar minimal trauma and Plaintiff was given Motrin and discharged (R. 214). On August 27, 2007, Plaintiff presented to the emergency room complaining of trouble with her asthma (R. 251). On examination, she was "breathing normally," her lungs were clear and the examining doctor felt she was "moving air very well." (R. 252). Plaintiff reported being out of her medications, including her anxiety medication and the impression was that Plaintiff could be interpreting an anxiety attack caused by lack of her anti-anxiety medication as an asthma attack. *Id.*

On November 26, 2007, Plaintiff returned to the emergency room complaining of asthma symptoms (R. 242-43). Examination showed expiratory wheeze diffusely, but "good saturation" and no laboring of breath. She was treated and discharged, with encouragement to follow up with her primary care physician "and not just coming to the ER when trouble is experienced" (R. 243). On March 19, 2008, Plaintiff returned to the ER complaining of breathing difficulties (R. 366-67). Examination revealed only "a few scattered wheezes" and she was assessed with an acute anxiety attack (R. 366-67). Plaintiff reported to the emergency room with intermittent wheezing on June 4, 2008 (R. 358-360), and was, again, discharged home. On February 10, 2009, Plaintiff returned to the ER complaining of wheezing (R. 401-05). Examination and chest x-ray (R. 406) were both normal, with lungs clear and no findings of wheezing.

In addition to the mild findings of the treating pulmonologist and emergency room physicians, Plaintiff was examined by a consultative physician who found her lungs clear to percussion and auscultation, with normal breath sounds (R. 320).

As for other impairments, the ALJ reviewed the treatment notes of Dr. Ortolani, Plaintiff's primary care physician. In September 2007, Plaintiff presented to Dr. Ortolani complaining of pain and memory and concentration problems which she felt were from the auto accident (R. 305). Dr. Ortolani diagnosed post-traumatic headaches, probably concussion; cervical strain syndrome; and lumbosacral strain syndrome (R. 305-06). On October 22, 2007, Dr. Ortolani noted that Plaintiff had moderate pain and difficulty, assessed an overall impairment of 10%, increased her medications and suggested stretching exercises (R. 302). In subsequent visits, Dr. Ortolani noted that Plaintiff's medications helped control her symptoms (R. 301), seemed to "give her effective relief" (R. 304), and, in December 2008, Dr. Ortolani observed that Plaintiff's headaches were slowly improving (R. 417). By May 2009, it was felt that Plaintiff's condition had stabilized and that she had good mobility in her neck and back (R. 408). Dr. Ortolani also noted that Plaintiff still had a moderate amount of pain but that her medications were controlling her symptoms (R. 408). In October 2009, Plaintiff complained of increased back pain, and Dr. Ortolani recommended that Plaintiff work on sitting up straight (R. 415). Dr. Ortolani's treatment notes list no functional limitations (R. 304-13, 407-27).

The consultative examiner found mild to moderate loss of range of motion, with 5/5 upper and lower extremity strength, negative straight leg raising, and normal gait; and Plaintiff was able to perform the heel and toe walk (R. 320). The consultative psychologist examined Plaintiff and found her energy level was normal; her mood was sad; she had no concentration or orientation deficits; she was able to correctly recall five sequential numbers, what she had for breakfast, and her medical and employment history, but new learning appeared to be impaired (R. 315-16). The record also includes reports from non-examining reviewers, who opined that Plaintiff could perform light work (R. 387-390), with certain limitations to accommodate her mental health issues (R. 345-46; 368-70).

Reviewing the entire record including the check box report, the Court finds that the Appeals Council did not err by concluding that the weight of the evidence was not contrary to the ALJ's decision.

**Side Effects**

Plaintiff next contends that the ALJ erred in failing to properly consider the side effects of Plaintiff's medications. The ALJ has a duty to elicit testimony and make findings regarding the effect of prescribed medications upon the ability to work, *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), and the Commissioner's regulations require that in making a determination of disability the ALJ must consider the type, dosage, effectiveness and side effects of any medications. 20 C.F.R. § 404.1529(c)(3)(iv). Here, Plaintiff contends that the Commissioner failed to evaluate her allegations of side effects due to her medications. The Court finds that the ALJ properly considered Plaintiff's allegations of side effects in determining that she was not under a disability.

In his determination, the ALJ explicitly noted Plaintiff's testimony that her medication makes her sleepy (R. 16), but found that Plaintiff's statements concerning her symptoms, including the side effects of her medications, were not entirely credible (R. 18-19). Specifically, the ALJ found that the medical evidence did not corroborate Plaintiff's allegations of medication side effects (R. 18). This finding is supported by substantial evidence. Treatment notes from Plaintiff's treating physicians do not include complaints of medication side effects (R. 301-13, 394-98, 407-25). *See Colon ex rel. Colon v. Commissioner of Social Sec.,* 2011 WL 208349, 2 (11th Cir. 2011) (unpublished) ("Substantial evidence supports the ALJ's decision to discredit Mr. Colon's complaints as they related to medication side effects: none of Mr. Colon's doctors reported any side effects from his medications, and he did not complain to them of any side effects."). Indeed, apart from her own subjective statements, there is no evidence in the record that Plaintiff's sleepiness (the only side effect

alleged) is actually caused by her medications, save for the medication Plaintiff was prescribed to be taken at night specifically "for sleep." (*e.g.* R. 308-09); *see, generally, Walker v. Commissioner of Social Sec.*, 2010 WL 4906743, 4 (11th Cir. 2010) (unpublished).

To the extent Plaintiff appears to suggest that the ALJ did not properly evaluate her other subjective symptoms of pain (which does not appear to be a side effect of medications, but is included by Plaintiff, inexplicably, in the side effect analysis), the Court also finds no error. When a claimant attempts to establish disability through his or her own testimony of subjective symptoms, the Eleventh Circuit follows a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). "If proof of a disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote, supra*, 67 F.3d at 1562 (quotation omitted). Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." *Carter v. Commissioner of Social Sec.,* 2011 WL 292255, 2 (11th Cir. 2011) (unpublished), *citing Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, as noted by the ALJ, Plaintiff's course of treatment was essentially routine and conservative in nature, consisting of medication and exercise, and Plaintiff has been generally successful in controlling her symptoms (R. 18). As set forth above, this statement is adequately supported by substantial evidence (*see, e.g.,* R. 301, 304, 308, 312, 408). The ALJ also cited other reasons to discredit Plaintiff's allegations of disabling symptoms, including Dr. Aneja's statement that Plaintiff did not give good effort during pulmonary functioning testing (R. 18, 424), and that there has been no inpatient or outpatient mental health care provided or recommended, and Plaintiff has not even sought counseling (R. 19). As these reasons are supported by substantial evidence, the credibility finding, including the finding with respect to side effects, will not be disturbed.

**The RFC Finding and the ability to work**

Plaintiff last presents two arguments conflated under a single heading of "The ALJ made findings not supported by substantial evidence." (Doc. No. 16 at p. 18).

Plaintiff contends that the RFC is not supported by substantial evidence in that "the ALJ did not include limitations from anxiety attacks, depression, moderate difficulties in pace, and medication ineffectiveness and side effects in his RFC." As noted above, however, the ALJ properly discredited some of Plaintiff's subjective symptoms (medication ineffectiveness and side effects) and included others in the formulation of the RFC, and this finding is supported by substantial evidence. To the extent that Plaintiff is contending that the ALJ "found that Ms. Tyson has moderate difficulties in pace (Tr. 15)," she is mistaken. The ALJ found that Plaintiff has moderate difficulties "[w]ith regard to concentration, persistence *or* pace. . ." (R. 15). The RFC explicitly notes: Plaintiff "can perform simple, routine, repetitive tasks and understand, remember, and carry out simple instructions, adapt to changes in the work setting, and maintain concentration and persistence for simple, routine, and repetitive tasks" (R.15). The ALJ also found that Plaintiff "can respond appropriately to supervisors,

-12-

co-workers, and to usual work situations." *Id.*  As such, the ALJ accommodated the limitations found to exist due to Plaintiff's anxiety and depression in the formulation of the RFC.  The Court finds no error.

Plaintiff next contends that the finding that Plaintiff could perform either her past relevant work or other work is not supported by substantial evidence in that "the ALJ did not include anxiety, depression, sleepiness, pain issues or limitations in pace in his hypothetical questions to the VE (Tr. 48, 51)." (Doc. No. 16, pp. 19-20).

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).  An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security,* 363 F. 3d 1155, 1161 (11th Cir. 2004).

Applied here, at hearing, the ALJ asked the Vocational Expert a hypothetical question that included functional limitations identical to Plaintiff's RFC (R. 15, 49-50).  As detailed in the analysis above, that RFC assessment included all of the limitations the ALJ found to exist from Plaintiff's anxiety and depression, and, as that finding is supported by substantial evidence, that is sufficient to support the hypothetical.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999) (holding the

hypothetical question need only include the Plaintiff's functional limitations that are supported by the record).[2]

A final note is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1),; 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff had challenges and difficulties during the time at issue, and no doubt afterwards, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

## Conclusion

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on April , 2011.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[2]The Vocational Expert responded to the hypothetical, testifying that Plaintiff could perform her past relevant work as a housekeeper (R. 50). In addition, the Vocational Expert testified that Plaintiff could perform the work of merchandise price marker, ticket seller, and hand packer (R. 50-51). The ALJ relied upon this testimony as support for his conclusion that Plaintiff could return to her past relevant work or, alternatively, could perform other work that exists in significant numbers in the national economy (R. 19-21).

Copies furnished to:

Counsel of Record